## DECLARATION OF JANAKI RANGASWAMY

I, JANAKI RANGASWAMY declare as follows:

1. I am employed by the United States Citizenship and Immigration Services (hereinafter "USCIS") as Supervisory Center Adjudications Officer (SCAO), at the California Service Center (CSC) in Laguna Niguel, California. I have been employed as an SCAO since November 2005 and have been employed in other capacities by the agency since May 1992. I am currently the supervisor of the N-400 unit which is responsible for overseeing the intake processing of N-400 Applications for Naturalization from initial receipt of the application by the CSC through the receipt of FBI name check clearances and scheduling the naturalization examination or interview in the USCIS district or field office where the applicant resides.

2. This declaration is submitted in support of Defendants' Motion to Dismiss in the case of Boris Levin v. FBI, CV 07-04971, currently pending in the Central District of California. This declaration provides a factual summary of the agency's adjudication policy as well as a review of the plaintiff's file. As Supervisor of the N-400 unit at CSC, I am in charge of the team that monitors and oversees the intake processing of the N-400 application for naturalization involved in this litigation. The information below is based upon review of the files, electronic records, personal knowledge, and other information that has become known to me in the course of my official responsibilities concerning the processing of this application.

3. The CSC is responsible for the receipt, processing and adjudication of certain immigrant and nonimmigrant visa petitions and other applications filed by petitioners and applicants residing in the western United States as well certain forms and petitions transferred from other Service Centers. The CSC averages 115,915 completions per month, including the receipt of and initial processing of N-400s prior to their transfer to local district offices.

During Fiscal Year 2007 the CSC oversaw the initial receipt of 401,050 N-400s for an average of 33,421 per month and completed the initial processing of 227,165 N-400s.

4. There are four Service Centers throughout the United States, each of which has jurisdiction over certain types of applications and petitions either filed within their respective geographic areas or assigned to them as part of a national bi-specialization effort. The four Service Centers combined average 387,776 receipts per month, or 4,265,536 in the last eleven months. Some Service Centers are the sole adjudicators of certain types of petitions; for instance the Nebraska Service Center adjudicates all refugee adjustment applications and all NAFTA applications, whereas the Vermont Service Center adjudicates all battered spouse applications. The Service Centers fulfill part of the USCIS responsibility to adjudicate benefits applications and are allocated part of the USCIS adjudication resources. In order to maximize productivity, the Service Centers have no public interface and process and adjudicate only petitions and applications that do not require personal interviews. Additionally, Service Centers do initial receipt, file creation, security clearances and processing of some petitions and applications that do require personal interviews prior to their relocation to USCIS District Offices. This includes Form N-400, Application for Naturalization, and Form I-589, Application for Asylum and for Withholding of Removal.

5. When a visa petition or other application seeking an immigration benefit on behalf of an alien is filed with USCIS, the agency conducts numerous mandatory criminal and national security background checks. These checks are conducted both to enhance national security and ensure the integrity of the immigration process. These security and background checks serve to screen out aliens who may seek to harm the United States and its citizens or who may be seeking immigration benefits improperly or fraudulently. These security checks have yielded significant derogatory information about alien applicants involved in violent crimes, sex crimes, crimes against children, drug trafficking and individuals with known links to terrorism. This has resulted in the alien

//

being found ineligible for the immigration benefit and USCIS's denial of the application or petition. Where applicable, the information has also resulted in aliens being arrested by law enforcement agencies or charged under removal grounds and deported from the United States.

6. The attached Fact Sheet explains the different types of checks that must be completed. (See Fact Sheet, dated April 25, 2006, a true and correct copy of which is attached hereto as Exhibit 1). The checks include the FBI Name Check, FBI fingerprint check, and the DHS-managed Interagency Border Inspection System (IBIS). The records maintained in the FBI name check process consist of administrative, applicant, criminal, personnel and other files compiled by law enforcement agencies that contain information that is not necessarily revealed by the FBI's fingerprint check or IBIS. Although in the majority of FBI name checks no matches are found, some cases involve complex or highly sensitive information and cannot be resolved quickly. The IBIS system contains records and information from more than 20 federal law enforcement and intelligence agencies including the Central Intelligence Agency (CIA), FBI and other divisions of the U.S. Department of Justice, the Department of State, DHS Customs and Border Protection (CBP) and other DHS agencies. It is a multi-agency effort with a central system that combines information from these various sources and databases to compile information regarding national security risks, public safety concerns, and other law enforcement concerns. IBIS provides, but is not limited to, information related to persons who are wanted criminals, persons of interest in the context of national security, and other derogatory information, including adverse immigration history. While the results of an IBIS query are usually available immediately, in some cases information found will require further investigation. Finally, FBI fingerprint checks provide information relating to criminal background within the United States. Results are usually received within days and while the vast majority result in no criminal record, positive results may have a direct bearing on the eligibility of an applicant for the

immigration benefit being sought.

7. The FBI has an established process of processing FBI Name Check requests from USCIS chronologically based on the date the request is forwarded. Since September 11, 2001, USCIS has submitted millions of name check requests to the FBI, thus taxing that agency's resources and creating a backlog in FBI's performance of complete security checks. During the initial submission period of December 2002 and January 2003, USCIS submitted almost 3 million names to the FBI. As of May 2007, USCIS had approximately 329,160 pending FBI Name Check requests with approximately 32 percent pending more than one year.

8. Since the terrorist attacks of September 11, 2001, the need to conduct more rigorous and thorough background checks on aliens who are seeking immigration status in the United States has required procedures that sometimes result in individuals not receiving their documents and benefits as quickly as in the past. In order to ensure national security and public safety, as well as to reduce the waiting time for adjudication and documentation of lawful status, USCIS is currently working with DOJ, DHS, and ICE to develop and implement improved procedures that will ensure that all of the background checks are completed and the results considered as quickly as possible. However, the public safety requires USCIS to make certain that the checks have been done before it adjudicates any application or petition and before it issues any immigration status documents to such persons. Accordingly, pursuant to established agency policy, all required security checks must be completed prior to adjudication of the application.

9. For most applicants, USCIS can quickly determine if there are criminal or security related issues in the applicant's background that affect eligibility for immigration benefits. However, due both to the sheer volume of security checks USCIS conducts, and the fact that USCIS must await responses from the FBI or other relevant agencies that conduct some of the required security checks, some delays on individual applications are unavoidable and may be lengthy. Moreover, in some cases a

background or security check will reveal that positive (derogatory) information on the subject alien is possessed by some agency other than USCIS without necessarily revealing the substance of that information. In such cases, USCIS works closely with the other law enforcement or intelligence agencies to obtain all available information concerning the positive result in order to properly evaluate its significance. Even where the FBI or a third agency has provided a final response, a case may still be considered pending where the response requires further investigation or review by USCIS or another agency. It is vitally important to thoroughly screen each applicant in order to resolve all concerns of a law enforcement or national security nature before determining that an individual is eligible for an immigration benefit.

10. USCIS will continue to perform any outstanding background and security checks as expeditiously as possible to ensure that no eligible alien must wait longer than is reasonably necessary to receive a decision on his or her application or petition and to receive evidence of his or her immigration status.

11. Since only aliens who are lawful permanent residents may apply for naturalization, all applicants for naturalization already have a previously created permanent immigration file (A-file) which houses their application for permanent residence and related files. Once USCIS receives an N-400 Application for Naturalization, the application is keyed in, placed into a receipt folder, a T-file (temporary file) is created and the A-file is requested electronically through the Central Immigration System ("CIS"). The T-file is placed on an N-400 shelf until the A-file is received and the N-400 is then consolidated into the permanent A-file. Much of this initial electronic processing and data entry is automated, including the automatic generation and electronic transmission of a FBI name check request by the CLAIMS 4 (Computer Linked Access Information Management System) via FBIQUERY, the FBI repository and tracking system for FBI Name Check requests. That electronic transmission of the FBI name check request by CLAIMS 4 is done automatically when the N-400 is first received and keyed in at the Service Center

and before the N-400 is placed on the N-400 shelf to await completion of all necessary security checks, including the FBI name check, and request by the local USCIS district offices for transfer of N-400s ready for interview and adjudication. N-400s are separated on the N-400 shelf by local district offices in accordance with the geographic location of the applicant and generally in chronological order according to date of receipt.

12. The FBI Name Check Quality Assurance desk of USCIS Service Center Operations issues a report to the CSC once or twice a month to identify N-400 applications that have received a "No Data" or "Error" response indicating a problem with transmission of the name check request from USCIS to the FBI. If such a problem is reported, the FBI name check requests will then be initiated a second time and resent manually or electronically to the FBI for a response. In this way USCIS ensures that the FBI has in fact received all requests for name checks. Additionally, the CSC N-400 unit runs C4 Workflow Current Activity Report monthly or more often as needed. In addition to other queries, this report identifies those cases queries those N-400 applications pending at the CSC which have an FBI name check response "ERROR". If more than 60 days have elapsed since the FBI response date, then these cases are entered into a spreadsheet and re-submitted to the FBI. The CSC also runs a RAFACS report approximately at least every other month that audits or "sweeps" all pending N-400s located at the CSC to determine the current status and to identify and resolve any problems. This report is reviewed to ensure that all necessary fingerprints and security checks, including the FBI name check, have been transmitted properly. FBI name check requests that have been received by the FBI but have not yet been completed are indicated by a notation of "Pending". An FBI Name Check that has been completed will be indicated by various entries depending on the result, including No Record, Positive Record, etc.

13. These reports do not provide USCIS with any information as to what information the FBI may have relating to a particular alien, whether an FBI investigation into the particular alien has been undertaken, or whether there are national security concerns relating to that

alien. Once a response is received from the FBI, that information is automatically uploaded in CLAIMS 4. Once the FBI name check and other security checks are completed, CLAIMS 4 automatically moves the N-400 into an interview queue. The N-400s then remain in the interview queue to await scheduling of interviews by the district offices. District Offices request the transfer of N-400s from the CSC from the interview queue by a "pick list" in accordance with their available adjudication resources and workload. Once an N-400 is requested by a district office the file is pulled by a contractor and is transferred to the district office in time for interview and adjudication there.

14. USCIS has a process for expediting processing of certain applications and petitions. It is important to note that whenever a particular application or petition receives expedited processing and is moved up in the adjudications queue, it is at the expense of those still unadjudicated petitions or applications that bear an earlier filing date. If, for example, USCIS asks the FBI to expedite a name check in a particular case, this action comes at the expense of other name check cases because the FBI would have fewer resources with which to work other pending cases.

15. In order to address in a consistent and fair manner the increasing number of mandamus actions filed nationwide by aliens awaiting decisions on their petitions and applications, USCIS issued specific guidelines for requesting an expedited name check from the FBI. Expedited processing may be pursued in the following situations:

    1. Military Deployment.
    2. Age-out cases not covered by the Child Status Protection Act and applications affected by sunset provisions such as the Diversity Visa Program.
    3. Compelling reasons provided by the requesting office such as critical medical conditions.
    4. Loss of Social Security benefits or other subsistence at the discretion of the Director.

16. To my knowledge, Plaintiff has not made a formal request for expedited processing. Moreover, U.S. Citizenship and Immigration Services (USCIS) will not routinely request the FBI to expedite a name check when the only reason for the request is that a mandamus (or other federal court petition) is filed in the case.

17. USCIS reports the average processing times for specific applications and petitions on the USCIS website. This information reflects only average processing times on the date the information is published. Average processing times fluctuate widely and will sometimes even regress for a specific form time due to a number of factors, including a reallocation of agency resources, reordering of the agency's priorities, and other reasons. Additionally, not every application will require the same level of inquiry. Some may require a more detailed level of review and or investigation from either the USCIS or other agencies for a number of reasons ranging from the alien's eligibility for the benefit sought to national security concerns. Accordingly, even when it appears that the adjudication of a particular application is outside the average processing time, this does not establish that the delay is unreasonable or even due to factors within the control of the agency.

18. There is no statutory or regulatory time limit for the adjudication of N-400s. Moreover, during the continued pendency of a naturalization application, the alien retains all of the rights and benefits of a permanent resident of the United States, including the right to live and work in this country and to travel freely abroad. Thus, applicants for naturalization are not as adversely affected by delays in the adjudication of their applications as are aliens filing for other immigration benefits.

19. In my capacity as Supervisory Center Adjudication Officer of the CSC, I have access to the official files and records of the USCIS. I have reviewed the system records for plaintiff Boris Levin, A070 215 913. Plaintiff Levin is a native and citizen of Russia. His status was adjusted to that of a Lawful Permanent Resident (LPR) of the United States on November 5, 2001. On August 9, 2006, he filed the instant N-400 Application

for Naturalization with the California Service Center. On August 21, 2006 a name check request was sent to the FBI. As of today's date, the name check for the plaintiff remains pending with the FBI. On August 25, 2006 the results of Plaintiff's FBI fingerprints check were received by USCIS. Plaintiff has not been yet scheduled for an interview on his application for naturalization.

20. In accordance with 8 CFR § 335.2(b), in the absence of a "definitive response" from the FBI with regard to the name check request, the plaintiff may not be scheduled for a naturalization interview and 'his case remains in a holding status.

21. Once the required security checks are completed, including the FBI name check, plaintiff's N-400 application will immediately be placed in the electronic queue to be scheduled for an interview in the District Office or the appropriate sub-office on the first available date in that location. The CSC will also immediately transfer the A-file to the place where the interview will take place. In the event that the FBI eventually reports a "positive response" or "PR," significant additional time would likely be required while USCIS learns the precise nature of the positive information and determines whether it would have any bearing on the outcome of the adjudication. Until such time as all security checks are complete, USCIS is unable to complete the processing and adjudication of this N-400 application.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 20th day of March, 2008 at Laguna Niguel, California.

JANAKI RANGASWAMY
Supervisory Adjudication Officer
California Service Center

*Press Office*
U.S. Department of Homeland Security



U.S. Citizenship
and Immigration
Services

# Fact Sheet

April 25, 2006

## Immigration Security Checks—How and Why the Process Works

**Background**

All applicants for a U.S. immigration benefit are subject to criminal and national security background checks to ensure they are eligible for that benefit. U.S. Citizenship and Immigration Services (USCIS), the Federal agency that oversees immigration benefits, performs checks on every applicant, regardless of ethnicity, national origin or religion.

Since 2002, USCIS has increased the number and scope of relevant background checks, processing millions of security checks without incident. However, in some cases, USCIS customers and immigrant advocates have expressed frustration over delays in processing applications, noting that individual customers have waited a year or longer for the completion of their adjudication pending the outcome of security checks. While the percentage of applicants who find their cases delayed by pending background checks is relatively small, USCIS recognizes that for those affected individuals, the additional delay and uncertainty can cause great anxiety. Although USCIS cannot guarantee the prompt resolution of every case, we can assure the public that applicants are not singled out based on race, ethnicity, religion, or national origin.

USCIS strives to balance the need for timely, fair and accurate service with the need to ensure a high level of integrity in the decision-making process. This fact sheet outlines the framework of the immigration security check process, explaining its necessity, as well as factors contributing to delays in resolving pending cases.

**Why USCIS Conducts Security Checks**

USCIS conducts security checks for all cases involving a petition or application for an immigration service or benefit. This is done both to enhance national security and ensure the integrity of the immigration process. USCIS is responsible for ensuring that our immigration system is not used as a vehicle to harm our nation or its citizens by screening out people who seek immigration benefits improperly or fraudulently. These security checks have yielded information about applicants involved in violent crimes, sex crimes, crimes against children, drug trafficking and individuals with known links to terrorism. These investigations require time, resources, and patience and USCIS recognizes that the process is slower for some customers than they would like. Because of that, USCIS is working closely with the FBI and other agencies to speed the background check process. However, USCIS will never grant an immigration service or benefit before the required security checks are completed regardless of how long those checks take.

Immigration Security Checks—How and Why the Process Works

---

**How Immigration Security Checks Work**

To ensure that immigration benefits are given only to eligible applicants, USCIS adopted background security check procedures that address a wide range of possible risk factors. Different kinds of applications undergo different levels of scrutiny. USCIS normally uses the following three background check mechanisms but maintains the authority to conduct other background investigations as necessary:

- **The Interagency Border Inspection System (IBIS) Name Check**— IBIS is a multiagency effort with a central system that combines information from multiple agencies, databases and system interfaces to compile data relating to national security risks, public safety issues and other law enforcement concerns. USCIS can quickly check information from these multiple government agencies to determine if the information in the system affects the adjudication of the case. Results of an IBIS check are usually available immediately. In some cases, information found during an IBIS check will require further investigation. The IBIS check is not deemed completed until all eligibility issues arising from the initial system response are resolved.

- **FBI Fingerprint Check**—FBI fingerprint checks are conducted for many applications. The FBI fingerprint check provides information relating to criminal background within the United States. Generally, the FBI forwards responses to USCIS within 24-48 hours. If there is a record match, the FBI forwards an electronic copy of the criminal history (RAP sheet) to USCIS. At that point, a USCIS adjudicator reviews the information to determine what effect it may have on eligibility for the benefit. Although the vast majority of inquiries yield no record or match, about 10 percent do uncover criminal history (including immigration violations). In cases involving arrests or charges without disposition, USCIS requires the applicant to provide court certified evidence of the disposition. Customers with prior arrests should provide complete information and certified disposition records at the time of filing to avoid adjudication delays or denial resulting from misrepresentation about criminal history. Even expunged or vacated convictions must be reported for immigration purposes.

- **FBI Name Checks**—FBI name checks are also required for many applications. The FBI name check is totally different from the FBI fingerprint check. The records maintained in the FBI name check process consist of administrative, applicant, criminal, personnel and other files compiled by law enforcement. Initial responses to this check generally take about two weeks. In about 80 percent of the cases, no match is found. Of the remaining 20 percent, most are resolved within six months. Less than one percent of cases subject to an FBI name check remain pending longer than six months. Some of these cases involve complex, highly sensitive information and cannot be resolved quickly. Even after FBI has provided an initial response to USCIS concerning a match, the name check is not complete until full information is obtained and eligibility issues arising from it are resolved.

For most applicants, the process outlined above allows USCIS to quickly determine if there are criminal or security related issues in the applicant's background that affect eligibility for immigration benefits. Most cases proceed forward without incident. However, due to both the sheer volume of security checks USCIS conducts, and the need to ensure that each applicant is thoroughly screened, some delays on individual applications are inevitable. Background checks may still be considered pending when either the FBI or relevant agency has not provided the final response to the background check or when the FBI or agency has provided a response, but the response requires further investigation or review by the agency or USCIS. Resolving pending cases is time-consuming and labor-intensive; some cases legitimately take months or even

**Immigration Security Checks—How and Why the Process Works**

---

several years to resolve. Every USCIS District Office performs regular reviews of the pending caseload to determine when cases have cleared and are ready to be decided. USCIS does not share information about the records match or the nature or status of any investigation with applicants or their representatives.